## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **AYODEJI FAJEMIROKUN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:14-CV-3602-L** |
| | § | |
| **METHODIST HEALTH SYSTEM and** | § | |
| **BENJAMIN ROZZELL,** in his individual | § | |
| and official capacity, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment (Doc. 37), filed March 3, 2017. After careful consideration of the motion, brief, appendix, record, and applicable law,[1] the court **grants** Defendants' Motion for Summary Judgment.

### I. Factual and Procedural Background

This action was reassigned to the undersigned on April 27, 2016, pursuant to Special Order No. 3-304 (Doc. 35). Prior to this date, it was assigned to then-chief Judge Jorge A. Solis. On September 5, 2014, Ayodeji Fajemirokun ("Fajemirokun") filed suit against Defendants Methodist Heath System ("MHS") and Benjamin Rozzell ("Rozzell") (collectively, "Defendants") in the 160th Judicial District Court of Dallas County, Texas, alleging claims under state and federal law. On October 6, 2014, Defendants timely removed the action to federal court. The suit arises from an arrest made by Rozzell, a Methodist Health System Police Department ("MHSPD") peace officer, at MHS for indecency with a child based on an eyewitness account and report by an MHS employee.

---

[1] No response was filed by Ayodeji Fajemirokun to Defendants' Motion for Summary Judgment.

In his Amended Complaint ("Complaint") (Doc. 32), filed February 29, 2016, Fajemirokun asserts federal claims pursuant to 42 U.S.C. § 1983. *See* Pl.'s First Am. Compl. He sues Defendants for false arrest and imprisonment, excessive force, and deprivation of his due process rights. *Id.* Fajemirokun further alleges state law claims for libel and slander, and intentional infliction of emotional distress against Defendants. *Id.* Finally, Fajemirokun alleges a state law claim against MHS for negligent hiring, training, and supervision of employees. *Id.*

Defendants filed a motion for summary judgment requesting that the court grant judgment in their favor and dismiss all claims against them because there is no genuine dispute of material fact regarding Fajemirokun's federal or state law claims. Defendants contend that Rozzell is entitled to qualified immunity on all of Fajemirokun's claims, and MHS is entitled to qualified immunity because MHS may assert any defense asserted by Rozzell. Defs.' App. 2. As previously noted, Fajemirokun filed no response to the motion.

## II. Standards

### A. Summary Judgment When No Response Filed

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make

credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude

the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Fajemirokun filed no response to Defendants' summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id*. Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her his unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In this case, Fajemirokun's pleadings are not verified, therefore, he has presented no summary judgment evidence. Under there circumstances, the court accepts as undisputed Defendants' version of the facts.

### B. Federal Standard for Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Rozzelle has asserted this defense in his summary judgment motion.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*,

28 F.3d at 429.  To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*" *Pierce*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525.  Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).  Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.*  (citations and internal quotations marks omitted).

## III.    Undisputed Facts

The following facts, for purposes of the court's ruling, are undisputed:

1. At all times relevant to the incident giving rise to Fajemirokun's claims, Rozzell was employed by MHSPD.  MHS provides police or security services through MHSPD, pursuant to section 52.214 of the Texas Education Code, which permits the governing board of a private, nonprofit medical corporation to provide such services to enforce Texas law.

2. On November 25, 2013, Rozzell arrested Fajemirokun for the offense of indecency with a child, based on an eyewitness report by an MHS employee, and transported him to the MHSPD

police station.  A minor scuffle ensued while placing Fajemirokun into the vehicle or getting him out of the vehicle.

3.  At the MHSPD police station, Fajemirokun was uncooperative and noncompliant with Rozzell's orders and directives.  Due to Fajemirokun's noncompliance, Rozzell had to place him in a police vehicle before transporting him to Mansfield City Jail.

4.  Following the arrest, Rozzell prepared an arrest report detailing the events that led to Fajemirokun's arrest.  On November 25, 2013, Deon Simmons ("Simmons"), a MHSPD peace officer, conducted a further investigation to review the accuracy of Fajemirokun's file.  On December 4, 2013, Simmons filed Fajemirokun's criminal case with the Tarrant County District Attorney's Office ("District Attorney's Office").

IV.    Analysis

A.  **Fajemirokun's § 1983 Claims Against Rozzell**[2]

*1. False Arrest and Imprisonment*

Fajemirokun contends that Rozzell did not have probable cause to arrest him for indecency with a child.  Pl.'s Compl. 11.  Rozzell counters that probable cause existed for Fajemirokun's arrest.  The court agrees.  The constitutional tort of false arrest requires a showing that probable cause to arrest did not exist.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citation omitted).  The court, therefore, begins its analysis by setting forth the meaning of probable cause in the context of an arrest.  Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [one] has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979) (citations omitted).  When determining whether a reasonable person would have believed that an offense occurred, a court considers the expertise and experience of law enforcement officials.  *United States v. Garcia,* 179

---

[2] Liberally construing Fajemirokun's Complaint, it appears that he purports to allege a claim of malicious prosecution.  Pl.'s Compl. 9, 17.  To the extent that he is alleging a claim of malicious prosecution, his claim fails as a matter of law.  Fajemirokun's malicious prosecution claim is barred because, standing alone, a claim of malicious prosecution is not a violation of the United States Constitution.  *Castellano v. Fragozo,* 352 F.3d 939, 942 (5th Cir. 2003).  To proceed under § 1983, a malicious prosecution claim must be based on a denial of rights secured under federal law.  *Id.*  While the "initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection," those claims are for the "lost constitutional rights" and "are not claims for malicious prosecution."  *Id.* at 953-54.  Assuming Fajemirokun's malicious prosecution claim would be based on his contention that he was arrested without probable cause, as the court in *Castellano* explained, "causing charges to be filed without probable cause will not without more violate the Constitution."  *Id.* at 953.  Further, "a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution [is] not viable," *Cuadra v. Houston Indep. Sch. Dist,* 626 F.3d 808, 812 (5th Cir. 2010) (citing *Castellano*, 352 F.3d at 942).  Accordingly, as Fajemirokun has failed to raise a genuine dispute of material fact on his malicious prosecution claim, the court determines that Defendants are entitled to judgment as a matter of law on this purported claim.

F .3d 265, 268 (5th Cir. 1999) (citing *United States v. Ortiz,* 442 U.S. 891, 897 (1975)). "Probable cause 'does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false.'" *Piazza v. Mayne,* 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Texas v. Brown,* 460 U.S. 730, 742 (1983)).

In determining whether probable cause exists, a court is required to find a basis for an officer to believe to a "fair probability" that an offense occurred. *Id.* (citing *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir. 1985)) (citations omitted). A "fair probability" does not mean that a reasonable person would have believed it more likely than not, which is a preponderance of the evidence standard, that an offense occurred. *Garcia,* 179 F.3d at *269; Antone,* 753 F.2d at 1304. It means "something more than a bare suspicion, but need not reach the fifty percent mark." *Garcia,* 179 F.3d at 269; *see also United States v. Watson,* 273 F.3d 599, 602 (5th Cir. 2001). An officer who has probable cause to believe that a person has committed even a minor offense may arrest the offender, and the arrest does not violate the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

The Texas Code of Criminal Procedure authorizes warrantless arrests when: (1) an officer has probable cause to believe both that a person has committed an assault resulting in bodily injury and that there is danger of further bodily injury; (2) an officer has probable cause to believe that a person has committed an offense involving family violence;[3] or (3) a credible person shows a peace officer, by satisfactory proof, that a felony has been committed and that the offender is about

---

[3] Family violence is defined as: "(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." Tex. Fam. Code Ann. § 71.004 (West 2015).

to escape.  Tex. Crim. Proc. Code Ann. §§ 14.0314.01(b), 14.02, 14.03(a)(1), 14.03(a)(2), 14.03(b) (West 2015).

Based on the undisputed evidence presented by Defendants, Alma Jean Smith ("Smith"), a lab support specialist employed by MHS, heard a young child screaming loudly "no, no, mommy, mommy, no!"[4] in the Labor and Delivery unit of MHS.  Defs.' App. 17.  Upon investigating the screams she heard, Smith observed Fajemirokun with his right hand between the child's legs making a back and forth motion.  *Id* at 7.  Ciara Gullett ("Gullett"), a Labor and Delivery unit Primary Care Technician employed by MHS, also heard the young child scream "NO! Stop!  I want my Momma.  Stop!  NO!  NO! NO!"  *Id.* at 26.  After Smith explained what she observed to Deanna Simpson, the supervisor on duty, Gullett contacted MHSPD.  Defs.' App. 17-19, 26.

 Rozzell was dispatched to the Labor and Delivery unit, and Smith informed him of what she had observed, that is, what the adult male was doing, the child's screams, and what the child was saying as he screamed.  *Id.* at 7.  At the request of Rozzell, Smith and Gullett completed written statements at the MHSPD police station regarding what they observed.  *Id.* at 7; 17-18; 27-28.  In her written statement, Smith stated that she noticed the child lying on his back, on the man's lap while the man had his right hand between the child's legs making a back and forth motion.  *Id.* at 18; 20-24.  While Smith was writing her statement at the police station, she identified Fajemirokun as the suspect through a camera monitor.  *Id.* at 7.  Rozzell observed Fajemirokun and the minor child on the camera monitor heading towards the hospital's exit. *Id.*  He immediately approached Fajemirokun and arrested him for indecency with a child.  *Id.*

---

[4] Although the punctuation is incorrect in Smith's statement in that it makes it appear that the child is talking to his mother, it is clear to any reasonable person from what Smith told Rozzell that the child was afraid and "calling out" to his mother for help.

Rozzell stated in his affidavit and in an arrest report that he arrested Fajemirokun based on the information he received from Smith regarding Fajemirokun committing an indecent act with a minor child. Defs.' App. 7-16. Under Texas law, a person commits the felony offense of indecency with a child if "he engages in sexual contact with [a] child or causes the child to engage in sexual contact." Tex. Penal Code Ann. § 21.11 (West 2017). The court determines that the totality of the facts and circumstances within Rozzell's knowledge was sufficient for a reasonable person to believe that Fajemirokun committed a felony or an offense involving family violence against a minor child. "[A]ny person purporting to be a crime victim or witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case." *Mungia v. State*, 911 S.W.2d 164, 167 (Tex. App.—Corpus Christi 1995, no pet.) (citation omitted); *see Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.) (citations omitted).

Under the circumstances, Rozzell reasonably relied on Smith's statement regarding what she believed to be an indecent act with a minor child. Moreover, as Rozzell observed Fajemirokun and the minor child in the camera monitor heading in the direction of the hospital's exit, he had an objectively reasonable basis to believe that Fajemirokun was about to escape or leave the premises; and he would not have had time to procure an arrest warrant. Therefore, probable cause existed under both state and federal law for Rozzell to arrest Fajemirokun for indecency with a child, and no violation for false arrest or imprisonment occurred under the United States Constitution or Texas law. Accordingly, Fajemirokun has failed to raise a genuine dispute of material fact regarding his claim for false arrest or imprisonment, and Rozzell is entitled to judgment as a matter of law. The court will enter summary judgment in his favor on this claim.

## 2. *Excessive Force Claim*

Fajemirokun alleges that Rozzell violated his right under the United States Constitution to be free from excessive force. Pl.'s Compl. 12. A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach under the Fourteenth Amendment to the United States Constitution." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).

Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id.* at 397 (citation omitted). Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted); *Tarver*, 410 F.3d at 751 (citation omitted). Injury can be one that is physical or psychological. *Ikerd v Blair*, 101 F. 3d 430, 434 n.9 (5th Cir. 1996).

Fajemirokun alleges that Rozzell used excessive force when he put handcuffs on his hands and when Rozzell caused him to hit his head on the police car's door frame while placing him in the vehicle. Pl.'s Compl. 13. Based on the undisputed evidence presented by Defendants, Fajemirokun was uncooperative and noncompliant with Rozzell's orders and directives, and a minor scuffle ensued during the parties' interaction. Defs.' App. 7. Rozzell stated in his affidavit that, because Fajemirokun was so uncooperative and refused to follow instructions, he had to place him in a police car. *Id.* It is not uncommon for an arrestee to experience some degree of discomfort when handcuffed, as handcuffs are used to restrain an individual and keep that individual under control. Further, a reasonable inference to be made from Rozzell's statement is that some degree of force was necessary to place Fajemirokun in the police vehicle. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22-27 (1968)). In *Glenn v. City of Tyler,* the Fifth Circuit held that "handcuffing too tightly, without more, does not amount to excessive force." 242 F.3d 307, 314 (5th Cir. 2001).

Moreover, the court notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation omitted). Fajemirokun does not allege, much less establish, that he suffered an injury that was more than *de minimis.* "To succeed on an excessive force claim, [a plaintiff] must demonstrate that he 'suffered at least some form of injury' from the defendant's actions that is more than *de minimis.*" *Aguilar v. Robertson*, 512 F. App'x 444, 449 (5th Cir. 2013) (citation omitted). Under the circumstances, Fajemirokun's injuries are, at best, *de minimis*. Moreover, based on the record, no evidence exists from which a reasonable jury could conclude that a minimal use of force was clearly excessive. The court further determines that, based upon

Fajemirokun's noncompliance, which is undisputed, no reasonable jury could conclude that a minimal use of force by Rozzell was clearly unreasonable. As Fajemirokun fails to raise a genuine dispute of material fact as to any of the elements required by Fifth Circuit precedent for a Fourth Amendment excessive force claim, Rozzell is entitled to judgment as a matter of law, and the court will enter summary judgment in his favor on this claim.

### 3. Deprivation of Due Process Rights

Fajemirokun alleges that Rozzell deprived him of due process of law by arresting him without probable cause and using excessive force against him during his arrest. Pl.'s Compl. 13. As all claims of excessive force must be analyzed under the Fourth Amendment, there can be no claim under the Fourteenth Amendment substantive due process clause. *Graham*, 490 U.S. at 395. As the court has determined that Fajemirokun failed to establish, or raise a genuine dispute of material fact, that Rozzell used excessive force against him in violation of the Fourth Amendment, his substantive due process claim fails as a matter of law. Accordingly, Fajemirokun has failed to raise a genuine dispute of material fact, and Rozzell is entitled to judgment as a matter of law. The court will enter summary judgment in Rozzell's favor on this claim.

### 4. Qualified Immunity

As the court has determined that no constitutional violation has occurred regarding any of Fajemirokun's federal claims, the court need not discuss the second prong of qualified immunity. *Saucier*, 533 U.S. at 201. In other words, the court has determined as a matter of law that Rozzell committed no constitutional violation against Fajemirokun, and the second prong of the qualified immunity analysis is unnecessary. In any event, should the appellate court disagree with this court's analysis, it holds as a matter of law that Rozzell would be entitled to qualified immunity on Fajemirokun's federal claims because a reasonable peace officer could have believed that

Rozzell's conduct was lawful and objectively reasonable, for the reasons stated earlier, in light of clearly established law and the information Rozzell possessed at the time he arrested Fajemirokun.

### B. Fajemirokun's § 1983 Claims Against MHS

Fajemirokun contends that his arrest and the use of force were the result of an unconstitutional policy or custom of MHS. He contends that MHS has a custom, policy, practice, or procedure that sanctions illegal conduct and false arrests by its peace officers against citizens, and that this policy caused him to be illegally arrested and subjected to the use of excessive force by an MHSPD officer. MHS disagrees and contends that Fajemirokun was not injured as a result of an unconstitutional policy or custom of MHS.[5]

MHS provides police or security services through MHSPD, pursuant to section 52.214 of the Texas Education Code, which authorizes the governing board of a private, nonprofit medical corporation to provide such services to enforce Texas law. *See generally* Tex. Educ. Code § 51.212 (West 2015). The Texas legislature has conferred upon nonprofit medical corporations such as MHS "the authority to enforce state law and a duty to preserve the peace, which benefits a public purpose." *William Marsh Rice Univ. v. Refaey*, 459 S.W.3d 590, 595 (Tex. 2015) (citing Tex. Educ. Code § 51.212 (West 2015)). MHSPD peace officers are vested with all the powers, privileges, and immunities of peace officers of the state of Texas. Tex. Educ. Code Ann. § 51.212(b) (West 2015). Fajemirokun alleges constitutional violations caused by MHSPD, which operates pursuant to rights created by the Texas legislature. Accordingly, the court determines that MHS may fairly be said to be a government entity as MHSPD is "uniquely governmental."

---

[5] Fajemirokun did not allege a claim for unconstitutional training or supervision under § 1983 in his Complaint; however, Defendants briefed the issue in their Motion for Summary Judgment. *See* Defs.' Br. in Supp. of Mot. for Summ. J. 35-38. Since the claim was not alleged in Fajemirokun's Complaint, it is not before the court, and the court will not address it.

*See University of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017) (holding that a private university qualified as a "government unit" as to its policing function pursuant to § 52.214 because its police force was "uniquely governmental."). Accordingly, the court will apply the law set forth by the United States Supreme Court and the Fifth Circuit regarding municipal liability under § 1983 and treat MHS as a local governmental entity.

A governmental entity can be sued and subjected to monetary damages and injunctive relief under § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979).

The court has held that Rozzell committed no constitutional tort against Fajemirokun. As the court has held that Rozzell committed no underlying constitutional violation and Fajemirokun suffered no constitutional injury, any issue regarding the constitutionality of any custom or policy by MHS is "quite beside the point." *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). In other words, if there is no underlying constitutional violation, there is no causal connection between an alleged injury and any custom or policy of MHS. Accordingly, Fajemirokun's claims against MHS fail as a matter of law, and the court will grant judgment in favor of MHS on these claims.

### C. Fajemirokun's State Law Claims Against Defendants

#### 1. Defamation

Fajemirokun alleges that Defendants "orally made and published a false statement of facts" that injured his reputation. Pl.'s Compl. 16. Specifically, Fajemirokun alleges that: (1) the arrest

report referring to him as a "Sex Offender" "found its way to the [I]nternet;" (2) he was regarded as a "criminal sex offender in some quarters;" and (3) a bail bonds staff member forced him "not to identify himself by his name but by his (criminal) book-in number." Pl.'s Compl. 15. Defendants deny that they libeled or slandered Fajemirokun. The court agrees.

Under Texas law, a defamatory statement is one in which the words tend to damage a person's reputation, exposing him to public hatred, contempt, ridicule, or financial injury. *Einhorn v. La Chance,* 823 S.W.2d 405, 410-11 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Texas law recognizes two types of defamation: libel and slander. An action for libel requires the publication of a written defamatory statement about the plaintiff to a third party. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 633-34 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Slander is an oral defamation published to a third party without legal excuse. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.).

To maintain a cause of action for defamation, a plaintiff must state facts which would show that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; and (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citing *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998) (citation omitted).

*a. Slander*

Fajemirokun relies on the theory of "self-publication" to establish his slander claim by alleging that he was required to identify himself by his criminal book-in number instead of his name, which damaged his reputation. Pl.'s Compl. 15. Texas courts, however, have "expressly

decline[d] to recognize a theory of compelled self-defamation." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 581 (Tex. 2017). Accordingly, as Fajemirokun relies on the unrecognized theory of "self-publication," his slander claim fails as a matter of law.

### b. Libel

Fajemirokun alleges that the publication of written information contained in the arrest report regarding his arrest damaged his reputation. Pl.'s Compl. 15-16. Based on the undisputed evidence presented by Defendants, Rozzell arrested Fajemirokun based on information he received from Smith regarding her observation of what she believed to be an indecent act with a minor child, which is a violation of a Texas statute. Defs.' App. 7-16. Following the arrest, Rozzell prepared an arrest report detailing the events that led to his arrest. Defs.' App. 10-15, 32-33. On November 25, 2013, Simmons conducted a further investigation to review the accuracy of Fajemirokun's file. *Id.* at 29-31. Following the investigation, Simmons filed Fajemirokun's criminal case with the District Attorney's Office. *Id.* at 30. On December 23, 2013, the District Attorney's Office requested further information about the incident. *Id.* In response to the request, Simmons had Smith elaborate on her written statement by providing a more detailed written statement. *Id.* The following day, Simmons submitted Smith's statement to the District Attorney's Office. *Id.*

MHSPD's communication with the District Attorney's Office is covered by a qualified privilege. "Qualified privilege can cover any communication made without malice between parties who share a particular interest or duty." *Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CA-180-SS, 2013 WL 3197641, at 6 (W.D. Tex. 2013) (citing *Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181, 195-96 (Tex. App.—El Paso 2005, pet. denied)) (citation omitted). The arrest report and Smith's supplemental statement were communicated between parties who share a

particular interest and duty. MHSPD and the District Attorney's Office share a common interest in protecting the public from criminal acts. Moreover, Simmons filed Fajemirokun's criminal case with the District Attorney's Office in the context of an investigation of misconduct and Fajemirokun's arrest. There is no evidence that establishes that the communication made between MHSPD and the District Attorney's Office was made with malice. Accordingly, Fajemirokun's libel claim fails as a matter of law, and he has failed to raise a genuine dispute of material fact. Defendants are entitled to judgment as a matter of law, and the court will enter summary judgment in their favor on this claim.

### 2. *Intentional Infliction of Emotional Distress*

Fajemirokun also alleges a claim for intentional infliction of emotional distress. Pl.'s Compl. 16. He contends that Rozzell acted intentionally and recklessly when he randomly arrested him without probable cause and held him in jail without justification, causing him mental anguish, humiliation, and emotional distress. *Id*. The elements of intentional infliction of emotional distress are: "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (citing *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)). "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kroger Tex., L.P.,* 216 S.W.3d at 796 (quoting *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993)). "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other

trivialities.'" *Kroger Tex., L.P.,* 216 S.W.3d at 796 (quoting *GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex. 1999)).

Intentional infliction of emotional distress was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman–LaRoche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex. 2004) (citation omitted). Because intentional infliction of emotional distress is a "gap-filler" tort, a plaintiff, in addition to the foregoing elements, must also establish that there are no alternative causes of action that would provide a remedy for the severe emotional distress caused by a defendant's conduct. *Kroger Tex. L.P.,* 216 S.W.3d at 796; *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 (Tex. 2005); *Hoffman–La Roche,* 144 S.W.3d at 447. If there is an independent set of facts that would support a claim for intentional infliction of emotional distress, the claim is not barred. *Hoffman–La Roche,* 144 S.W.3d at 450. On the other hand, if a plaintiff's intentional infliction of emotional distress claim is based on another tort, he cannot maintain an action for such claim, regardless of whether he chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred. *Id.* at 447-48.

Fajemirokun cannot maintain an action for intentional infliction of emotional distress. Based on the undisputed evidence presented by Defendants, the court determined that Rozzell had probable cause to arrest Fajemirokun. An arrest based on probable cause, as a matter of law in this case, does not establish, or raise a genuine dispute of material fact, that Rozzell's conduct was so "extreme and outrageous" "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kroger Tex. L.P.*, 216 S.W.3d at 796 *(*citation omitted). Moreover, as Fajemirokun's intentional infliction of emotional distress

claim is based on his false arrest and imprisonment claim, he does not have an independent set of

facts that would support a claim for intentional infliction of emotional distress. Therefore, as a

matter of law, he cannot maintain an action for intentional infliction of emotional distress. For

these reasons, Fajemirokun has failed to raise a genuine dispute of material fact regarding his claim

for intentional infliction of emotional distress, and Defendants are entitled to judgment as a matter

of law. The court will enter summary judgment in their favor on this claim.

### 3. Negligent Hiring, Training, and Supervision

Fajemirokun also alleges that MHS was negligent in hiring, training, and supervising its

employees, agents, representatives, and officers. Pl.'s Compl. 14-15. Negligent hiring, retention,

and supervision claims are all simple negligence causes of action based on an employer's direct

negligence rather than on vicarious liability. *Castillo v. Gared, Inc.,* 1 S.W.3d 781, 786 (Tex.

App.—Houston [1st Dist.] 1999, pet. denied). The elements of a negligence action are a duty, a

breach of that duty, and damages proximately caused by the breach. *Greater Houston Transp. Co.

v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). Generally, the employer-employee relationship

creates a duty on the part of the employer to control the employee's conduct. *See Otis Eng'r Corp.

v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983). An employer also has a duty to adequately hire, train,

and supervise employees, and the negligent performance of those duties may impose liability on

an employer if the complainant's injuries are the result of the employer's failure to take reasonable

precautions to protect the complainant from misconduct of its employees. *See Dieter v. Baker

Serv. Tools,* 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied). An employer,

however, cannot be held liable for negligently hiring or retaining an employee, unless the

employee committed an actionable tort. *See Gonzales v. Willis,* 995 S.W.2d 729, 738 (Tex. App.—

San Antonio 1999, no pet.) *overruled in part on other grounds by Hoffmann–La Roche Inc,* 144

S.W.3d at 447-48; *Wang v. Prudential Fin. Corp.*, No. CIV. 3:05-CV-2091-H, 2006 WL 1489427, at 3 (N.D. Tex. 2006). This rule comports with the fundamental principle that a person cannot be held liable for negligence, no matter how egregious, unless the negligence causes a legally compensable injury. *Gonzales,* 995 S.W.2d at 738.

The conduct or misconduct Fajemirokun relies upon to support his claim of negligent hiring, training, and supervision is his arrest by Rozzell and subsequent detention. Pl.'s Compl. 14-15. As the court has determined that Fajemirokun's state and federal claims fail as a matter of law, he has no independent actionable tort, and MHS cannot be held liable for negligent hiring, training, and supervision of its employees. Accordingly, Fajemirokun has failed to raise a genuine dispute of material fact regarding his claim of negligent hiring, training, and supervision, and MHS is entitled to judgment as a matter of law. The court will enter summary judgment in MHS's favor on this claim.

## V.    Conclusion

For the reasons stated herein, the court **concludes** that no genuine dispute of material facts exists as to any of Fajemirokun's claims; and Defendants are entitled to judgment as a matter of law. Accordingly, the court **grants** Defendants' Motion for Summary Judgment (Doc. 40), and **dismisses with prejudice this action** and Fajemirokun's claims against Defendants. The court will enter judgment in accordance with this opinion and order by separate document as required by Federal Rule of Civil Procedure 58(a).

**It is so ordered** this 21st day of February, 2018.

Sam A. Lindsay
United States District Judge